UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| WILLIAM G. SUAREZ, )<br>)<br>    Plaintiff, )<br>)<br>  v. )<br>)<br>TOWN OF OGDEN DUNES, INDIANA; )<br>ROBERT TROWBRIDGE; HAROLD )<br>McCORKEL, )<br>)<br>    Defendants. ) | NO. 2:05-CV-264 PS |

## **OPINION AND ORDER**

Before the Court is Plaintiff William G. Suarez's Petition for Relief from Judgment or Order Pursuant to Federal Rule of Civil Procedure 60 [Doc. 19].  Plaintiff seeks to vacate the Court's Order dismissing his complaint with prejudice for lack of prosecution.  Unfortunately, Plaintiff has shown more interest in litigating this case after its dismissal than while it was pending.  However, because he has failed to show excusable neglect, Plaintiff's Motion is denied.

### I.  BACKGROUND

On July 6, 2005, Plaintiff filed suit against the Town of Ogden Dunes and police officers Robert Trowbridge and Harold McCorkel ("Defendants"), alleging several violations of Plaintiff's civil rights [Doc. 1].  Plaintiff was represented in the action by his father, attorney William S. Suarez [Doc. 3].  On September 9, 2005, the parties were sent notice of a Rule 16 Preliminary Pretrial Conference scheduled for October 14, 2005 [Doc. 10].  In preparation for the pretrial conference, attorneys for both parties participated in a Rule 26(f) Planning Meeting

1

on October 7, 2005 [Doc. 12].  On October 14, 2005, Plaintiff failed to appear, in person or through counsel, at the preliminary pretrial conference held by Magistrate Judge Rodovich [Doc. 13].  Judge Rodovich nevertheless approved the Discovery Plan and Scheduling Order previously agreed upon by the parties and filed with the Court [Doc. 12-13].  However, because of Plaintiff's failure to appear at the pretrial conference, Judge Rodovich also issued a Show Cause Order on October 19, 2005, commanding Plaintiff to inform the Court in writing within ten days as to why he failed to appear for the pretrial conference [Doc. 14].

Plaintiff did not respond to Judge Rodovich's Order.  Judge Rodovich therefore recommended to this Court on November 7, 2005 that Plaintiff's Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute [Doc. 15].  Pursuant to 28 U.S.C. § 636(b)(1), the parties had ten (10) days after being served with a copy of Judge Rodovich's Report and Recommendations to file written objections.  Neither party filed any objections.  Because Plaintiff failed to object, Plaintiff's Complaint was dismissed with prejudice by this Court on March 17, 2006 [Doc. 16].  On April 3, 2006, Attorney Kenneth Reed filed a notice of appearance on behalf of Plaintiff, and Plaintiff filed the present Motion for relief from judgment [Docs. 18 & 19].

## II.  DISCUSSION

Federal Rule of Civil Procedure 60 regulates the procedures for obtaining relief from final judgments.  Plaintiff requests consideration of his Motion pursuant to Federal Rule of Civil Procedure 60(a) and 60(b), arguing that "the failure to respond to the Show Cause Order involved errors arising from oversights or omissions" and that "the matter involved nothing more or less than mistake, inadvertence, surprise and excusable neglect."  (Pl.'s Mot. ¶ 11.)

To begin with, Plaintiff admits that his attorney received notice of the pretrial conference but failed to properly record the conference on his calendar due to his health problems, relocation of his residence/legal office, and poor memory. (*Id.* ¶¶ 3, 5.) Plaintiff further reports that his attorney was hospitalized on July 14, 2005 and underwent surgery for three aortic aneurysms. (*Id.* ¶ 3.)

According to Plaintiff, the e-mail address used by the Clerk's Office in serving the Show Cause Order was made "of record in June of 2005. . ." (*Id.* ¶ 10.) However, Plaintiff reports that this e-mail address was inaccessible after the Suarez family moved from their residence/legal office on September 29, 2005. (*Id.* ¶¶ 9-10.) As a result, Plaintiff was unable to receive or respond to Judge Rodovich's Show Cause Order. (*Id.*) Plaintiff alleges that the "Show Cause Order and e-mail should have come back [to the clerk's office] with [an] indication that it had not been delivered." (*Id.* ¶ 9.) But this assertion places the shoe on the wrong foot. It was Plaintiff's (and his counsel's) responsibility to notify the Court of the change of e-mail address.

### A.     Rule 60(a) Analysis

Rule 60(a) provides that a Court may correct "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission . . ." Fed. R. Civ. P. 60(a). "Whether 60(a) is available depends upon whether the judgment said what the judge actually meant: if the flaw lies in the translation of the original meaning to the judgment, then Rule 60(a) allows a correction; if the judgment captures the original meaning but is infected by error, then the parties must seek another means of authority to correct the mistake." *Klingman v. Levinson*, 877 F.2d 1357, 1360-61 (7th Cir. 1989) (alteration and internal quotations omitted) (citing *United States v. Griffin*, 782 F.2d 1393, 1396 (7th Cir. 1986)). In deciding whether Rule

3

60(a) applies, courts must "distinguish between changes that implement the result intended by the court at the time the order was entered and changes that alter the original meaning to correct a legal or factual error.  Rule 60(a) allows for the former, but not the latter."  *Kokomo Tube Co. v. Dayton Equip. Servs. Co.*, 123 F.3d 616, 623 (7th Cir. 1997) (citation and internal quotations omitted).

Plaintiff requests relief pursuant to Rule 60(a) "inasmuch as the failure to respond to the Show Cause Order involved errors arising from oversights or omissions" without specifically identifying the oversights or omissions he believes warrant Rule 60(a) relief.  (Pl.'s Mot. ¶ 11.) The Court can only speculate that Plaintiff intends to suggest that his failure to receive the Show Cause Order via e-mail warrants Rule 60(a) consideration.  Such an application of Rule 60(a) would be inconsistent with the Rule's design and intended implementation.  "It is settled that this rule applies only to an error of transcription, copying, or calculation, and not to a fundamental failure of discovery or notification."  *Bershad v. McDonough*, 469 F.2d 1333, 1336 (7th Cir. 1972).  Contrary to Rule 60(a)'s explicit language, Plaintiff has not identified any error arising in the judgment itself.  Plaintiff does not suggest that the judgment reflects anything other than what was actually intended by the Court at the time it was issued.  Instead, Plaintiff seeks relief from the judgment's intended meaning and its legal effect.  Thus, Plaintiff's Motion is not proper under Rule 60(a).

  **B.** **Rule 60(b) Analysis**

When a judgment is entered by a court, there is finality.  The concept of finality is an important one, and thus fidelity to a judgment is implicit in Rule 60(b). It is for this reason that "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances."

*Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (citation omitted).  Courts have broad discretion in considering Rule 60(b) motions.  *See Easley v. Kirmsee,* 382 F.3d 693, 697 (7th Cir. 2004).

Plaintiff here argues that the matter involved "mistake, inadvertence, surprise, and excusable neglect," (Pl.'s Mot. ¶ 11), and in doing so, indicates that his request is being made pursuant to all four Rule 60(b)(1) factors.  Rule 60(b)(1) states: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect[.]"  Fed. R. Civ. P. 60(b)(1).  A Rule 60(b)(1) inquiry focuses on the conduct that gave rise to the dismissal.  *See Fed. Election Com'n v. Al Salvi for Senate Comm.,* 205 F.3d 1015, 1020 (7th Cir. 2000).  Here, there are obviously no grounds for surprise.  Furthermore, Plaintiff's arguments for mistake or inadvertence are more appropriately addressed by analyzing whether the Plaintiff's neglect of this case was excusable.[1]

Accordingly, the Court now turns to the inquiry of whether Plaintiff's actions amount to excusable neglect, thereby entitling Plaintiff to Rule 60(b) relief.  "[T]he determination of what amounts to 'excusable neglect' under Rule 60(b) is 'at bottom an ***equitable*** one, taking account of ***all the relevant circumstances*** surrounding the party's omission.'"  *Robb v. Norfolk &*

---

[1] Courts in the Seventh Circuit commonly apply standards for "excusable neglect" when analyzing motions pursuant to 60(b)(1) generally.  *See e.g.*, *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 609 (7th Cir. 1986) (affirming the denial of a 60(b)(1) motion where plaintiff's complaint was dismissed when his attorney failed to respond to a motion to dismiss or appear at a pre-trial conference); *Easley v. Kirmsee*, 382 F.3d 693, 699 (7th Cir. 2004) (affirming denial of 60(b)(1) motion where summary judgment was granted after plaintiff's counsel failed to respond to summary judgment motions).

*Western Ry. Co.*, 122 F.3d 354, 359 (7th Cir. 1997) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)) (emphasis in original).  The relevant circumstances for courts to consider include: (1) the reasons for the delay, including whether it was within the reasonable control of the movant; (2) the danger of prejudice to the defendant; (3) the length of the delay and its potential impact on judicial proceedings; and (4) whether the movant acted in good faith.  *Id.*  When considering the relevant circumstances of this case, the Court notes that "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer*, 507 U.S. at 396; *see also Tango Music, LLC v. Deadquick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003) ("If the lawyer's neglect protected the client from ill consequences, neglect would become all too common.  It would be a free good.") (citation and internal quotations omitted).

  First, the reasons for the dismissal in this case were entirely within the control of Plaintiff or his attorney.  Plaintiff argues that he did not respond to the Show Cause Order because it was sent to an e-mail address to which he no longer had access, and therefore did not have the "opportunity to object to Magistrate Judge Rodovich's Recommendations."  (Pl.'s Reply at 2.) Plaintiff admits that the Show Cause Order was sent via e-mail to an address registered with the clerk's office on behalf of Plaintiff's attorney.  (Pl.'s Mot. ¶ 10.)  If this address was no longer valid, it was Plaintiff or his counsel's obligation to inform the Court of the change and provide accurate and updated contact information.  Despite this obligation, they did not do so.

  Plaintiff and his counsel's failure to monitor the litigation they initiated is also inexcusable.  Attorneys are obliged to follow their cases.  Courts in the Seventh Circuit have frequently found that "attorney inattentiveness to litigation is not excusable, no matter what the

resulting consequences the attorney's somnolent behavior may have on a litigant." *Easley*, 382 F.3d at 697 (citations omitted); *see also Harold Washington Party v. Cook County, Ill. Democratic Party*, 984 F.2d 875, 880 (7th Cir.1993) ("When a party abdicates its responsibilities through its attorneys' carelessness, relief from judgment under Rule 60(b) is not warranted.").

Plaintiff asserts that this case deals with "a very serious matter," (Pl.'s Reply at 5), and the Court does not question Plaintiff's assertion. The docket indicates, however, that neither Plaintiff nor his counsel made any inquiries or took any action in this case between the Rule 26(f) planning meeting on October 7, 2005 and when Plaintiff's instant Motion was filed on April 3, 2006. A six-month lapse in which Plaintiff did not inform the Court of his counsel's illness, disability, or relocation, nor monitor and pursue the litigation, is inexcusable.

Second, Plaintiff argues that no prejudice will result to Defendants if this case is reinstated because the "Discovery Plan and Scheduling Order . . . provides for time remaining in the year 2006 and 2007 to undertake to perform all of the pretrial obligations, and to meet all of the dates and requirements thereof." (Pl.'s Mot. ¶ 12). To support this argument, Plaintiff contends that "[D]efendants will have more than ample opportunity to extract discovery from plaintiff" and "[D]efendants are already in control of most of the witnesses, and virtually all of the records." (Pl.'s Reply at 5.) Disputing Plaintiff's contention, Defendants argue that "[m]onths of defense preparation have been put off, discovery has been foregone and reinstatement of the case would severely prejudice the defense." (Defs.' Resp. at 8.) The Court agrees that Defendants would be prejudiced by the reopening of this case when Plaintiff appeared to stop his pursuit of this matter (at least until he filed the current Motion), thereby providing Defendants with supposed finality.

7

Third, granting Plaintiff's Motion would require the Court to ignore the six-month lapse of Plaintiff and his counsel in monitoring this litigation and the subsequent potential impact on judicial proceedings. Trial courts have a responsibility to move cases toward conclusion, and enforcing deadlines is an important component of that task. *See Campania Mgmt., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 851-52 (7th Cir. 2002) ("We encourage the district courts to use a firm hand when shepherding cases to trial . . . ."); *cf. Smith ex rel. Smith v. Severn*, 129 F.3d 419, 424-25 (7th Cir.1997) (emphasizing the need for adherence to reasonable deadlines in the practice of law) (quoting *Spears v. City of Indianapolis,* 74 F.3d 153, 157 (7th Cir. 1996)).

This Court has an obligation to manage its docket. Plaintiff and his counsel failed to appear at the preliminary pretrial conference, failed to respond to a subsequent Show Cause Order and then failed to object to Magistrate Judge Rodovich's Report in which he recommended dismissal. Plaintiff's disregard of the Court's orders and deadlines provided a sufficient reason under Rule 41(b) to dismiss his action for lack of prosecution. *See Easley*, 382 F.2d at 698; *see also Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998) (per curiam) ("District courts inherently possess the authority to dismiss a case sua sponte for want of prosecution. Such a dismissal is one of the tools available to district courts 'to achieve the orderly and expeditious disposition of cases.'") (citations omitted).

Nothing in *Kruger v. Apfel*, 214 F.3d 784 (7th Cir. 2000) (per curiam), a case cited by Plaintiff, commands a different result. (Pl.'s Reply at 3-4.) In *Kruger,* the Seventh Circuit held that missing ***one*** deadline did not "rise to the level of long-standing or contumacious conduct warranting dismissal." *Id.* at 787. However, the facts of this case are distinguishable from *Kruger* in that Plaintiff and his counsel's actions included ***several*** missed deadlines and ignored

8

orders.[2]

Likewise, *Sharif v. Wellness Int'l Network, Ltd*, 376 F.3d 720 (7th Cir. 2004), does not assist Plaintiff. (Pl.'s Reply at 3-4.) The *Sharif* Court did discuss appropriate measures trial courts must take when dismissing a case with prejudice. However, Plaintiff's reliance upon *Sharif* is misguided for two reasons. First, the *Sharif* Court noted that the Seventh Circuit has "repeatedly held that a district court ordinarily may not dismiss a case for want of prosecution without first providing an explicit warning to the plaintiff." *Id.* at 725. Here, the Court provided ample warning to Plaintiff by first issuing a Show Cause Order and then an opportunity to object to the Report and Recommendations before his Complaint was dismissed. Second, the facts in *Sharif* provide a guide on how Plaintiff could have taken action to prevent the dismissal of his Complaint. In *Sharif*, the court acknowledged that plaintiff's counsel actively participated in the case, and had received prior authorization for any delay (including one to undergo surgery) from the judge. *Id.* Unfortunately for Plaintiff in this case, neither he nor his attorney took any such action to pursue or monitor Plaintiff's litigation to prevent the dismissal of Plaintiff's Complaint. Accordingly, the relief suggested by the *Sharif* Court is not appropriate here.

In sum, it is the totality of the relevant circumstances that determines whether Plaintiff's

---

[2] The Seventh Circuit in *Kruger* stated that "[a] magistrate judge's recommendation that a case should be dismissed for failure to prosecute is not the sort of explicit warning contemplated by [*Ball v. City of Chicago*, 2 F.3d 752, 755 (7th Cir. 1993)]." *Kruger*, 214 F.3d at 788. The Court then is unclear on what exactly is an appropriate explicit warning in a "failure to prosecute" case where a magistrate judge has recommended dismissal and no parties have objected. Nevertheless, the Seventh Circuit modified this holding in *Fischer v. Cingular Wireless, LLC*, 446 F.3d 663 (7th Cir. 2006) by holding that the warning need not come from the district court judge "despite a contrary suggestion in [*Kruger*]." *Id.* at 666. The court reasoned: "The purpose of requiring a warning is not to entrap district judges but to make sure that the plaintiff is warned." *Id.* Thus, the Court finds that it provided a proper warning to Plaintiff via the Magistrate Judge's Report and Recommendation.

neglect is excusable.  Plaintiff failed to notify the Court of his counsel's health complications or his relocation.   Plaintiff also failed to provide the Court with a proper address at which he could be contacted and served, thereby resulting in missed deadlines and eventually dismissal of the case.  Additionally, Plaintiff neglected to monitor his case, or the Court's docket, for a lengthy six months.  The reasons for Plaintiff and his counsel's delay were in their control, the ailments of his attorney notwithstanding.  Rather than vigorously pursue his litigation, Plaintiff showed inattentiveness to this litigation until after his Complaint was dismissed and judgment entered.  With this back drop, while the Court is sympathetic to the Plaintiff's cause, we simply cannot say that the "extraordinary remedy" of relief from judgment is appropriate here.

### III.  CONCLUSION

For the above reasons, the Court **DENIES** Plaintiff's Motion for Relief from Judgment or Order Pursuant to FRCP 60 [Doc. 19].

**SO ORDERED**.

Entered: October 17, 2006.

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
